IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DAKOTA HUTSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-1356-STE |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

I.  **PROCEDURAL BACKGROUND**

The Social Security Administration denied Plaintiff's application initially and on reconsideration. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 11-24). The Appeals Council denied Plaintiff's

request for review. (TR. 1-6). Thus, the ALJ's decision became the Commissioner's final decision.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity (SGA) since December 23, 2013, the alleged amended disability onset date. (TR. 13). At step two, the ALJ determined that Ms. Hutson had the following severe impairments: borderline intellectual functioning; mood disorder; adult antisocial behavior; and a history of polysubstance abuse. (TR. 13). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 14).

The ALJ next assessed Plaintiff's residual functional capacity (RFC) and found she could:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: no more than simple, routine, repetitive tasks with no strict production requirements; and no more than simple work-related decision making with few, if any, changes in the work setting; no public contact; no more than occasional contact with co-workers and supervisors; no joint, team, or tandem tasks; and no more than a second grade reading and math level required.

(TR. 15-16). Then, at step four, the ALJ found that Plaintiff had no past relevant work. (TR. 22). Finally, at step five, the ALJ presented a vocational expert (VE) with a hypothetical question including the limitations found in Plaintiff's RFC to determine whether there were jobs in the national economy that Plaintiff could perform. (TR. 67-

69). The VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 68-69). The ALJ adopted the VE's testimony and concluded that Ms. Hutson was not disabled based on her ability to perform the identified jobs. (TR. 22-23).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in: (1) failing to discuss the relevant factors required in C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A), (C); (2) failing to include functional limitations in the RFC stemming from her severe antisocial behavior; (3) ignoring Plaintiff's GAF score; (4) failing to consider whether Plaintiff could perform the relevant work on a consistent basis; (5) crafting an improper question to the VE; and (6) finding Plaintiff could perform the national jobs with a limitation to second grade reading.[1]

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

---

[1] In her "overview" paragraph, Plaintiff also suggests the RFC is "flawed" because "it is too general in nature . . . ." (ECF No. 19:2). She also states that the ALJ "repeatedly used noncompliance and willingness to violate the law as reasons for rejecting her claim on credibility . . . ." (ECF No. 19:2). However, Plaintiff wholly fails to support these statements with any case law or developed arguments elsewhere in the brief and this Court will not develop claims for her. *See Keyes-Zachary*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review.").

While the Court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, it will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.  ANALYSIS

### A.  The ALJ's Alleged Step Three Error

The Court first addresses Plaintiff's allegation that the ALJ failed to "discuss[]" the factors required in 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A), (C). (ECF No. 19:9). The Court finds this argument wholly inaccurate. This regulation relates to the findings an ALJ must make at step three, and the ALJ clearly discussed all the necessary factors at that stage of the analysis. (TR. 14-15). Plaintiff offers no challenge to the actual step three finding that Plaintiff's severe impairments do not meet or equal a listed impairment, and the Court affirms on this issue.

### B.  Plaintiff's RFC

Ms. Hutson next challenges the ALJ's RFC assessment, claiming that she failed to include any limitations based on Plaintiff's severe antisocial behavior and arguing that the medical record shows she cannot "tolerate even *occasional* contact with supervisors and coworkers." (ECF No. 19:3, 5-6 (emphasis in original)). The Court finds no grounds for reversal on these issues.

First, Plaintiff alleges that the ALJ failed to include any limitations related to her antisocial behavior. (ECF No. 19:3, 6). But the ALJ clearly limited Plaintiff to "no public contact; no more than occasional contact with co-workers and supervisors; [and] no joint,

team, or tandem tasks[.]" (TR 15-16). Two State agency psychologists reviewed the medical record and opined that Plaintiff could perform work within these boundaries despite her severe antisocial behavior and the ALJ gave those opinions "substantial weight." (TR. 20, 78-87, 91-101). Plaintiff does not challenge that weight assignment. Moreover, Plaintiff does not explain how these restrictions fail to account for her antisocial behavior. *See Kirkpatrick v. Colvin*, 663 F. App'x 646, 649 (10th Cir. 2016) (rejecting plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how the[] restrictions [that were included in the RFC] fail to account for his [limitations]").

Second, Plaintiff claims that substantial evidence shows she cannot engage in even occasional contact with co-workers or supervisors. (ECF No. 19:5). As evidence, Plaintiff relies on (1) a consultative examiner who found that "'the presence of mental illness likely interfered with [Ms. Hutson's] ability to adapt to competitive work environment;'" (2) a consultative examiner who found that she would need help managing funds, vocational rehabilitation, and anger management; and (3) a treating psychiatrist who thought she had "extreme limitations in the ability to respond appropriately to changes in the work setting, be aware of normal hazards, travel in unfamiliar places or use public transportation, set realistic goals or make independent plans." (ECF No. 19:5 (citing TR. 294, 317, 324)). How these opinions relate to Plaintiff's alleged inability to occasionally interact with co-workers or supervisors is a question Plaintiff does not answer. Moreover, the ALJ discussed this evidence and largely dismissed it, giving all the opinions little to only some weight. (TR. 16-21). Plaintiff does not challenge the ALJ's weight assignments

5

and this Court will not reweigh the evidence. In sum, Plaintiff simply fails to identify any substantial evidence that would preclude her from occasional interaction with co-workers or supervisors.[2] *See Arles v. Astrue*, 438 F. App'x. 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim a limitation should have been included in his RFC because "such a limitation has no support in the record").

### C. Plaintiff's GAF Score

According to Plaintiff, a therapist assigned her a GAF score "which reflected unemployability" and the ALJ ignored it. (ECF No. 19:5). Again, the Court finds no grounds for reversal.

"The GAF is a 100–point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes–Zachary*, 695 F.3d at 1162 n. 1. In 2010 – a full three years before her amended alleged disability onset date – Plaintiff was given a GAF score of 47. (TR. 292). The ALJ did not discuss that particular score, but did discuss a GAF score of 61 that Plaintiff received in March 2013, and a GAF score of 15 that Plaintiff received following an overdose in May 2013. (TR. 21). Ultimately, the ALJ gave the scores little weight, noting that they are subjective, rather than objective, measures and are not intended for forensic purposes. (TR. 21).

The Court finds no error in the ALJ's failure to specifically discuss a GAF score assigned three years before Plaintiff alleges that she became disabled. *See, e.g., Clifton*

---

[2] Plaintiff testified to such behavior, but the ALJ found her to be less than credible. (TR. 14, 16-20). Plaintiff does not challenge the credibility findings.

v. *Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."). Further, while Plaintiff clearly believes her GAF score reflected an inability to work, "the [Social Security Administration] does not consider GAF scores to 'have a direct correlation to the severity requirements in [the] mental disorders listings,'" and the "'*Diagnostic and Statistical Manual of Mental Disorders* has discontinued its use because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'" *Rose v. Colvin*, 634 F. App'x. 632, 636 (10th Cir. 2015) (citations omitted); *see also Butler v. Astrue,* 412 F. App'x 144, 147 (10th Cir. 2011) (noting GAF scores that are not linked to any work-related limitations are not particularly helpful and cannot alone determine disability). So, the Court rejects any argument suggesting reversal on the issue.

### D. Plaintiff's Ability to Sustain Work

Plaintiff next describes herself as "violent" and complains that the ALJ failed to consider whether she would be able to sustain work for eight hours a day, five days a week, or hold a job for a significant time without decompensating. (ECF No. 19:6-7, 9). However, aside from claiming the "earning records reflect Ms. Huston never approach[ed] SGA levels," (ECF No. 19:7), Plaintiff relies exclusively on her own testimony to show she is incapable of working eight-hours a day and maintaining employment. (ECF No. 19:4-5). But the ALJ found Plaintiff lacked credibility, (TR. 14, 16-20), and Plaintiff does *not* challenge that assessment. Further, the ALJ's finding that Plaintiff could maintain a work schedule and long-term employment is implicit in the RFC assessment. *See* SSR 96-8p, 1996 WL 374184, at *1 (noting the RFC "is an assessment of an individual's ability to do

7

sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Accordingly, the Court affirms on this ground.

### E. The Hypothetical Question to the VE

Relying on her previous arguments, Plaintiff alleges that because the RFC did not contain the proper limitations, the hypothetical question to the VE was fundamentally flawed. (ECF No. 19:6). She further argues that the ALJ failed to "relate with specificity" the Plaintiff's "specific impairments" and "failed to utilize *all* of the Plaintiff's impairments." (ECF No. 19:9). In particular, Plaintiff complains about the terms "simple" and "routine" in the hypothetical question. (ECF No. 19:10). Again, the Court finds no grounds for reversal.

Plaintiff is correct that before a VE's testimony can constitute substantial evidence, the hypothetical question posed to the expert must precisely relate a claimant's impairments. *See Bainbridge v. Colvin*, 618 F. App'x 384, 391 (10th Cir. 2015). But that question "must contain 'only those impairments borne out by the evidentiary record.'" *Id.* (citation and internal ellipsis omitted)). Here, the ALJ asked the VE whether jobs would be available for a claimant who could perform "no more than simple, routine, repetitive tasks with no strict production requirements, no more than simple work-related decision making with few, if any, changes in the work setting" and who needed "no public contact and no more than occasional contact with coworkers and supervisors." (TR. 67). The question also reflected that the claimant could perform "no joint team or tandem tasks and no more than a second grade reading and math level required." (TR. 69). These

8

questions included all the limitations in Plaintiff's RFC, and the Court has already rejected Plaintiff's related challenges to the RFC assessment. Finally, Plaintiff fails to explain why the hypothetical question's reference to simple and routine work did not adequately address her limitations and the Court finds no error on this point. *See Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016); *see also Rivera v. Colvin*, 629 F. App'x 842, 846 (10th Cir. 2015) ("[The ALJ] found that Rivera could understand, remember, and carry out simple instructions, and that she could occasionally interact with supervisors and coworkers, but should have no contact with the public. The ALJ included all of these limitations in his hypothetical questions to the VE. The VE's answer was therefore sufficient to support the ALJ's disability decision.").

### F. The Reading Requirements of the Step Five Jobs

Finally, Plaintiff alleges that the ALJ erred in finding Plaintiff can perform the jobs of janitor (DOT 381.687-018), warehouse worker (DOT 922.687-058), and bottling line attendant (DOT 920.687-042) because the jobs "all require much more than a second grade reading and math level." (ECF No. 19:11-12). Plaintiff cites no case law to support her conclusion, instead relying on her attorney's assertion that he could not have performed such jobs "by the fourth grade and that was making straight A's . . . ." (ECF No. 19:12).

To perform the janitor job, Plaintiff would need to have:

> Level 2 – READING: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.

9

> Level 1 – Add and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound.

DOT 381.687-018 (Cleaner, Industrial). For the jobs of warehouse worker and bottling line attendant, Plaintiff would need the same math abilities but would need only:

> Level 1 - READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.

DOT 922.687-058 (Laborer, Stores); DOT 920.687-042 (Bottling-Line Attendant).

The VE testified that these three jobs required only a second grade reading ability, (TR. 69), and aside from an anecdotal story about his own fourth grade experiences, Plaintiff's attorney offers no conflicting evidence or case law. Accordingly, the Court affirms on this issue.

## ORDER

The Court has reviewed the medical evidence, the administrative hearing transcript, the ALJ's decision, and the parties' pleadings and briefs. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on November 14, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE